## THE TWO FANNYS.

*(District Court, D. New Jersey    June 13, 1885.)*

SEAMEN'S WAGES—FORFEITURE—LEAVING DURING MONTH.

A sailor who leaves the vessel because he is told by the mate that the master claimed he was not to receive wages, but was serving for his board only, will not forfeit his wages for the time he has served, where there was no contract that he should perform a full month's service before any wages was earned. *Moore v. Neafie,* 3 Fed. Rep. 650, followed.

Libel *in rem.*
*Bedle, Muirheid & McGee,* for libelant.
*C. F. Hill,* for respondents.

NIXON, J. This is an unfortunate controversy,—one which ought never to have arisen, and which never would have arisen if the master had more clearly explained to the libelant the conditions under which he was hired. The sailor is generally helpless, and in all these disputes with the master about wages he is regarded as under the protection of the court. When, therefore, the master leaves so much uncertainty and indefiniteness about the terms of the bargain with the seaman, he must not complain if all doubts are resolved in favor of the more ignorant party to the contract. There is no dispute between the parties in regard to the time of the service, or about the rate of compensation for the first month. The libelant was to be paid at the rate of $20 per month while the boat was lying up, and was to board himself. He has received $20 in cash, for his services from January 19th to February 19th while the vessel was idle, and the parties are thus brought up to the nineteenth of February without much controversy. She then started with her crew, and the libelant began his services as cook and before the mast. His understanding was that he was to have at the rate of $20 per month and board, without deduction when the boat was idle, and the master claims that when he could get no freight, either the wages or the

board of the libelant should stop. The libelant claims in his libel that there is due to him $16 for his services from February 19th to March 14th at the rate of $20 per month, and board. The answer denies that respondent owes such sum, (1) because he has paid at least a portion of it; and (2) because the libelant has forfeited all wages by desertion.

The proofs show that the libelant has received at different times $24 in cash. Of this $20 must be appropriated to the payment of his dues as keeper from January 19th to February 19th. The master says that the remaining four dollars was paid by him to libelant for grub, which the latter should have provided. The testimony is not clear upon this point, but I think the weight is in favor of the respondent. This sum, therefore, should be deducted from the $16 earned after the boat started, leaving due to libelant $12, unless some part of his wages should stop when the boat was doing nothing, and unless he has forfeited all wages by deserting the vessel.

1. I think no deduction should be made from the libelant's wages after the boat received her crew and started on February 19th. No bargain was entered into, and the libelant was employed by the same master during the preceding season, when no docking of wages was claimed or made when the boat was idle. The libelant had the right to assume that he would receive the same compensation for the current year, unless some new arrangement was definitely agreed upon.

2. With regard to forfeiture for desertion, the libelant undoubtedly left without the permission of the master. He did it because the mate told him that the master claimed that he was not to receive wages, but was serving for his board only. Under the circumstances, did he lose the right to claim wages for the portion of the month which he had served? The contention of the claimant is that the hiring was for a definite period, to-wit, for a month, and that if the libelant left before the month expired, without permission, all wages earned to the date of leaving was forfeited. That is unquestionably the common-law rule; but it is not applied in the admiralty, unless the proof is clear that the contract was for a whole month of service, and that the master, according to the custom of the parties, was liable for a full month's pay if he should discharge the seaman without cause before the month terminated. But the testimony shows that such has not been the custom in this branch of the maritime service. The vessel made no voyages, but was engaged in carrying freight in and about New York and Newark bay. The crew were picked up and discharged according to the will of the master. The rate per month indicated the rate of compensation, and not the length of the service. When the sailor chose to leave, or the master wished to discharge, the sailor was paid up to the time of leaving, at the rate per month for which he had been hired. If such a course leads to inconvenience, the master has it in his power to change it, by entering into a definite contract as to the time of service as well as to the

amount of wages. The rule must be interpreted to operate both ways, and while the master claims or exercises the right to discharge when he pleases, the sailor must be allowed to go when he pleases.

The subject was carefully examined by Judge CHOATE, in *Moore* v. *Neafie*, 3 Fed. Rep. 650, and I see no reason to doubt the correctness of the conclusions which he reached. There was nothing in the contract in the present case which required the libelant to perform a full month's service before any wages were earned, and there must be a decree in his favor for $12, and interest and costs.